## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHREE VALLABH KRUPA LLC, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 14-4765** |
| **SANJEEV RAJ VERMA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

### MEMORANDUM

**Tucker, C.J.**                                                                          **April 13, 2016**

Presently before the Court are Defendants' Motion for Summary Judgment (Doc. 29), Plaintiffs' Response in Opposition (Doc. 30), and Defendants' Reply to Plaintiffs' Response in Opposition (Doc. 32). Upon consideration of the parties' submissions and exhibits and for the reasons set forth below, the Court GRANTS Defendants' Motion.

### I.    FACTUAL BACKGROUND

In their Complaint, Plaintiffs Shree Vallabh Krupa LLC ("Shree") and Malvern Oil LLC ("Malvern") allege that Defendants Sanjeev Raj Verma ("Sanjeev Verma"), Kamlesh Modh ("Modh"), Sandeep Verma ("Sandeep Verma"), Dunkin Donuts Franchising LLC ("Dunkin Donuts Franchising"), and Lukoil North America LLC ("Lukoil"), misrepresented the length of years provided in a lease agreement between the parties. Plaintiffs' allege the following claims: (1) fraud in the inducement; (2) breach of contract; (3) tortious interference; (4) unfair business practices; and (5) breach of implied covenant of good faith. The material, undisputed facts follow.

On or about May 12, 2008, Getty Petroleum Marketing Inc. ("Getty"), a non-party, entered into a lease amendment and extension agreement with Morelli Enterprises LP, a non-party, to extend its lease for the premises located at 201 Morehall Road, Malvern, Pennsylvania. Def. Mot. for Summ. J. ¶ 2, Doc. 29.  The term of the lease extended through November 12, 2017, and granted Getty two five-year options to renew the lease.  *Id.*  If both options are exercised, the lease would extend through November 12, 2027.  Verma Dec. ¶ 4, Doc. 29.  After signing the lease extension, Getty sold all of its assets, including the above-mentioned lease to Defendant Lukoil.  Def. Mot. for Summ. J. ¶ 3.

On or about October 21, 2008, Lukoil, as sub-landlord, entered into a lease with Plaintiff Malvern, as sub-tenant, to operate a Lukoil retail gas station and convenience store at the property located at 201 Morehall Road, Malvern, Pennsylvania. *Id.* ¶ 4.  Plaintiff Malvern is a Pennsylvania Limited Liability Company that was formed on September 15, 2008. *Id.* ¶ 1.  Malvern's original members were Defendants Sanjeev Verma, Modh, and Sandeep Verma. *Id.*  The lease agreement between Malvern and Lukoil is governed by the Petroleum Marketing Practices Act ("PMPA") 15 U.S.C. § 2801. *Id.*

On or about November 30, 2008, Plaintiff Malvern, as sub sub-landlord, entered into a Convenience Store Sub-Lease (the "Convenience Store Sub-Lease") with Plaintiff Shree, as sub sub-tenant, to operate a Dunkin Donuts franchise at the property located at 201 Morehall Road, Malvern, Pennsylvania. *Id.* ¶ 5.  The Convenience Store Sub-Lease states in pertinent part:

> This Agreement shall be effective upon the date of execution hereof by each of Host [Malvern] and Franchisee [Shree], ***and shall continue in effect for an initial term (the "Initial Term") beginning on the first day that the Satellite opens for business (the "Commencement Date") and ending ten (10) years thereafter (the "Initial Termination Date").  In addition, Franchisee [Shree] shall have two (2) five (5) year options to extend the Term of this Agreement***, provided that Franchisee [Shree] notifies Host [Malvern] of its election to so extend the Term

2

> not less than one hundred eighty (180) days prior to the Initial Termination Date
> or the expiration of the first five (5)-year option period, as the case may be, and
> further provided that Host [Malvern] itself has a lease term to cover the applicable
> option period(s). The Initial Term of this Agreement, as it may be extended or
> terminated in accordance herewith, shall be referred to herein as the "Term." ***Host
> [Malvern] represents and warrants that it has the right to occupy the Store until
> the Initial Termination Date.***

Compl. Exh. A, ¶ 2, Doc. 1 (emphasis added).  If exercised, the two five-year options would

extend the term of the Convenience Store Sub-Lease until November 30, 2028.  Def. Mot. for

Summ. J. ¶ 5.  On or about May 27, 2009, Plaintiff Shree entered into a Franchise Agreement

with Defendant Dunkin Donuts Franchising to operate a Dunkin Donuts, in accordance with its

Convenience Store Sub-Lease with Malvern.  *Id.* ¶ 7.

On or about June 3, 2010, Defendants Sanjeev Verma, Modh, and Sandeep Verma, who

owned 100% of the member's interest in Malvern, agreed to sell all of their units in Malvern to

Rajesh Adhikari ("Adhikari").  *Id.* ¶ 8.  All parties to the transaction were represented by legal

counsel.  *Id.*  During the period of due diligence, Adhikari had access to the PMPA Sub-Lease

between Plaintiff Malvern and Defendant Lukoil, and the Convenience Store Sub-Lease between

Plaintiff Malvern and Defendant Shree.  *Id.*  ¶ 9.  The Membership Unit Transfer Agreement

stated that:

> Prior to Closing, Purchaser [Adhikari] shall accept a new lease or lease
> assignment for the existing Lease, at Landlord's [Lukoil's] option, executed by
> the Landlord [Lukoil], which shall be subject to Purchaser's [Adhikari's]  review
> and approval, but shall be on terms which are identical [to] the existing lease.
> The new lease or lease assignment shall not prohibit the current subtenant to the
> premises, a Dunkin Donuts franchisee, to remain as a subtenant, with similar, if
> not the same terms as their current tenancy with Sellers [Sanjeev Verma, Kamlesh
> Modh, and Sandeep Verma].

Verma Dec., Exh. D ¶ 3.01.  Additionally, the Membership Unit Transfer Agreement included a

provision that Adhikari would indemnify Defendants Sanjeev Verma, Modh, and Sandeep

Verma from any "all liabilities or claims relating to and arising out of the operation of the Company and Business after the Closing Date." *Id.* ¶ 7.

On or about January 24, 2013, Plaintiff Shree sought to sell its interest in the Dunkin Donuts franchise to Kamala at Malvern, LLC ("Kamala"). Def. Mot. for Summ. J. ¶ 11. After signing the Purchase and Sale Agreement, Kamala attempted to get a Small Business Administration ("SBA") loan, at which time it "discovered that there was only 5 years to go on the Lease and not 15 years," thus causing "[Plaintiff] Shree to substantially reduce the amount of Lease purchase consideration." Compl. ¶ 14(a).

In addition to the above-mentioned undisputed facts, Plaintiffs contend that Defendants misrepresented the length of the terms of the Convenience Store Sub-Lease by stating that "the lease had a 20 year term to be extended to, to the year 2027 and not only 8 years to the year 2017." *Id.* ¶ 16. Plaintiffs further contend that as a result of the misrepresentation, Adhikari "entered into a membership transfer agreement to buy Malvern, assume[d] the ongoing lease/PMPA franchise with Lukoil and signed [a] Franchise Agreement with Lukoil...." *Id.* ¶ 18(a). Plaintiffs are claiming damages in excess of $457,000.00. *Id.* ¶ 22(B)(1).

## II.  PROCEDURAL HISTORY

On August 12, 2014, Plaintiffs filed their Complaint against Defendants. Doc. 1. On October 6, 2014, Defendant Dunkin Donuts Franchising filed a motion to dismiss all claims. Doc. 2. On December 1, 2014, the Court granted Defendant's Motion to Dismiss and Defendant Dunkin Donuts Franchising was dismissed from the case. Doc. 15. On January 5, 2016, Defendants Sanjeev Verma, Modh, Sandeep Verma, and Lukoil filed the instant Motion for Summary Judgment. Doc. 29.

### III.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, courts shall grant summary judgment in favor of the moving party if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is "material" if it is "one that might 'affect the outcome of the suit under governing law.'" *Smith v. Johnson & Johnson*, 593 F.3d 280, 284 (3d Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute as to a material fact is "genuine" if it "is one that 'may reasonably be resolved in favor of either party.'" *Lomando v. United States*, 667 F.3d 363, 371 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 250)).

On summary judgment, the movant has the initial "burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact."  *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015).  If the movant can sustain its initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a *genuine issue for trial*.'"  *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "[A]t the summary judgment stage the [court's] function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  In doing so, the court "must construe all evidence in the light most favorable to the nonmoving party."  *Santini*, 795 F.3d at 416.  Nevertheless, the court must be mindful that, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  Accordingly, the court must determine "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
*Id.* at 251–52.

## IV.   DISCUSSION

This Court has subject matter jurisdiction over the instant case because Plaintiffs are citizens of Pennsylvania, Defendants are citizens of New Jersey and Massachusetts, and the amount in controversy exceeds $75,000.00.  28 U.S.C. § 1332; Compl. ¶ 6.  Since "[a] federal court sitting in diversity applies the choice-of-law rules of the forum state . . . to determine the controlling law," this Court will apply Pennsylvania law.[1]  *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013).

Defendants raise the following grounds upon which it moves for summary judgment: (1) Plaintiffs failed to prove the elements for fraud in the inducement; (2) Plaintiffs failed to establish that Defendants breached the Convenience Store Sub-Lease; (3) Plaintiffs failed to prove their claim for tortious interference; (4) Plaintiffs failed to provide any factual basis to make a claim under the Pennsylvania Uniform Trade Practices and Consumer Protection Law ("UTPCPL"); and (5) Plaintiffs cannot pursue an independent claim for breach of the implied covenant of good faith.[2]  The Court will address each in turn.

### A.   *Fraud in the Inducement*

Defendants argue that Plaintiffs cannot establish a claim for fraud in the inducement because Defendants did not make any misrepresentations regarding the terms of the Convenience Store Sub-Lease.  Under Pennsylvania law, to establish fraud in the inducement a plaintiff must

---

[1] Neither party has produced the Convenience Store Sub-Lease in its entirety; therefore the Court cannot discern whether the contract contained a choice of law provision.  Both parties have assumed, however, that Pennsylvania law applies.  Accordingly, the Court finds that it is appropriate to apply the law of the forum state and will apply Pennsylvania law.

[2] Defendants also argue that summary judgment is appropriate because Plaintiffs failed to answer Defendants' interrogatories or otherwise respond to Defendants' discovery requests.  Because the Court has concluded that

demonstrate by clear and convincing evidence: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 257 (3d Cir. 2013). In cases alleging fraud in the inducement—as is the case here—the theory is that "since fraud induced the agreement, no valid agreement came into being and parol evidence is admissible to show that the alleged agreement is void." *Blumenstock v. Gibson*, 811 A.2d 1029, 1036 (Pa. Super Ct. 2002). However, "a party cannot justifiably rely upon prior oral representations yet sign a contract denying the existence of those representations." *Id.* Additionally, "[u]nsupported assertions and conclusory accusations cannot create genuine issues of material fact as to the existence of fraud." *Id.* at 1034. Accordingly, before submitting a case to the jury, the trial court must determine "whether plaintiffs' evidence attempting to prove fraud is sufficiently clear, precise and convincing to make out a prima facie case." *Beardshall v. Minuteman Press Int'l, Inc.*, 664 F.2d 23, 26 (3d Cir. 1981); *see also Lind v. Jones*, *Lang LaSalle Americas, Inc.*, 135 F. Supp. 2d 616, 621 (E.D. Pa. 2001) ("Pennsylvania law requires the trial judge to decide as a matter of law before he submits a case to the jury whether plaintiffs' evidence attempting to prove fraud is sufficiently clear, precise, and convincing to make out a prima facie case.").

The Court concludes that Plaintiffs failed to articulate any misrepresentation concerning the length of the Convenience Store Sub-Lease. Plaintiffs allege that Defendant Verma, as the Lessor/Landlord, specifically misrepresented that the Convenience Store Sub-Lease had a twenty-year term to be extended to, when there was actually only a period of approximately

---

summary judgment is proper based on the merits of the action, the Court need not address whether dismissal would be an appropriate sanction for Plaintiffs' failure to respond to Defendants' discovery requests.

eight-years left on the lease.  Compl. ¶ 10–11.  Pennsylvania courts have long recognized that ""[i]n real estate transactions, fraud arises when a seller knowingly makes a misrepresentation, undertakes a concealment calculated to deceive, or commits non-privileged failure to disclose.'" *Fidelity. Nat. Title Ins. Co. v. Craven*, Civil Action No. 12-4306, 2012 WL 5881856, at *7 (E.D. Pa. Nov. 21, 2012) (quoting *Sewak v. Lockhart*, 699 A.2d 755, 759 (Pa. Super. Ct. 1997)); *see also Gordon v. McManus*, No. 972 EDA 2013, 2014 WL 10917627, at *7 (Pa. Super. Ct. June 30, 2014).  Here, Plaintiffs have failed to establish that Defendants knowingly made a misrepresentation, undertook a concealment calculated to deceive Plaintiffs, or committed non-privileged failure to disclose.

The language in the Convenience Store Sub-Lease unequivocally provides for an initial term of ten-years, with two five-year options to extend the lease, "provided that [Malvern] itself has a lease term to cover the applicable option period."  Compl., Exh. A., ¶ 2.  If exercised, the two five-year options would extend the term of the Convenience Store Sub-lease until November 30, 2028, which is what is represented in the Convenience Store Sub-Lease.  *Id.* While the Court acknowledges that the Master Lease can only be extended to November 12, 2027, the Convenience Store Sub-Lease states that "[Malvern] represents and warrants that it has the right to occupy the Store until the Initial Termination Date," which is November 30, 2018.  *Id.*  Thus, the express terms of the Convenience Store Sub-Lease only guarantee the lease until November 30, 2018.  Plaintiffs failed to produce any documents during discovery suggesting that Defendants' representations in the Convenience Store Sub-Lease are false or misleading. Moreover, Plaintiffs failed to produce evidence of any specific oral misrepresentations made by the Defendants, either before or after the signing of the Convenience Store Sub-Lease.  Instead,

Plaintiffs rely solely on "unsupported assertions and conclusory accusations." *Blumenstock*, 811 A.2d at 1034.  Accordingly, Plaintiffs cannot establish a claim for fraud in the inducement.

### B. *Breach of Contract*

Defendants argue that Plaintiffs cannot prove that Defendants breached a duty imposed by the Convenience Store Sub-Lease.  To establish a breach of contract claim under Pennsylvania law, a plaintiff must prove the following: "'(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract[,] and (3) resultant damages.'" *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).  The important inquiry in determining if a contract is enforceable, is whether the parties "'manifested an intention to be bound by [the contract] terms and whether the terms are sufficiently definite to be specifically enforced.'" *ATACS Corp. v. Trans World Commc'ns., Inc.*, 155 F.3d 659, 665 (3d Cir. 1998) (quoting *Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 298–99 (3d Cir. 1986)).

The existence of the Convenience Store Sub-Lease contract is undisputed.  However, Plaintiffs failed to establish that Defendants breached a duty imposed by the Convenience Store Sub-Lease.  In their Complaint, Plaintiffs generally allege that Defendants breached "obligations and duties" pertaining to the five contracts attached to the Complaint.  Compl. ¶¶ 25–26.  As far as the Court can discern, Plaintiffs' breach of contract claim is premised on the allegation that Defendants made misrepresentations concerning the length of the Convenience Store Sub-Lease.  The Court has already concluded, however, that Plaintiffs failed to establish any misrepresentations concerning the length of the Convenience Store Sub-Lease.  The Convenience Store Sub-Lease states that "[Malvern] represents and warrants that it has the right to occupy the [Dunkin Donuts] until the Initial Termination Date," which is November 30, 2018.

Compl., Exh. A. ¶ 2.  Plaintiffs have not produced any evidence indicating that the actual lease

term is less than what is provided for in the Convenience Store-Sublease.  Moreover, Plaintiffs

continue to operate the Dunkin Donuts franchise under the Convenience Store Sub-Lease.  Def.

Mot. for Summ. J. ¶ 12.  Accordingly, Plaintiffs failed to establish a breach of contract claim.

### C.  *Tortious Interference*

Defendants argue that Plaintiffs' claim for tortious interference must be dismissed,

because Plaintiffs' prospective relationship with Kamala was unknown to Defendants at the time

of the Convenience Store Sub-Lease.[3]  Under Pennsylvania law, to prevail on a claim for tortious

interference, a plaintiff must prove:

> (1) the existence of a contractual or prospective contractual or economic
> relationship between the plaintiff and a third party; (2) purposeful action by the
> defendant, specifically intended to harm an existing relationship or intended to
> prevent a prospective relation from occurring; (3) the absence of privilege or
> justification on the part of the defendant; (4) legal damage to the plaintiff as a
> result of the defendant's conduct; and (5) for prospective contracts, a reasonable
> likelihood that the relationship would have occurred but for the defendant's
> interference.

*Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009).

To determine whether a prospective contractual relationship exists, "Pennsylvania courts

have considered whether the evidence supports a finding that there was an objectively

'reasonable likelihood or probability' that the contemplated contract would have materialized

absent the defendant's interference."  *Id*. at 213 (quoting *Glenn v. Point Park Coll.*, 272 A.2d

---

[3] Defendants also suggest that Plaintiffs' tortious interference claim is barred by the two-year statute of limitations.
*See CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 383 (3d Cir. 2004) ("Pennsylvania
courts apply the two year statute of limitations of 42 Pa. Cons. Stat. § 5524(3) to tortious interference with
contractual relations claims.").  However, under Pennsylvania law, the statute of limitations begins to run on a claim
for tortious interference with a contract once the plaintiff has suffered an injury as a result of the defendant's
conduct.  *William A. Graham Co. v. Haughey*, 568 F.3d 425, 439 (3d Cir. 2009).  In this case, Plaintiff Shree did not
seek to sell its interest to Kamala until on or about January 24, 2013, which is when Plaintiff Shree learned of the
alleged misrepresentations and was required to reduce its price in the transaction.  Accordingly, the element of
damages was not present until on or about January 24, 2013, and Plaintiffs would have two-years from that date to

895, 898–99 (Pa. Super Ct. 1971)).  "A 'reasonable likelihood' of occurrence is something less than a contractual right but more than a mere hope that there will be a future contract."  *Id.* (quoting *Phillips v. Selig*, 959 A.2d 420, 428 (Pa. Super. Ct. 2008)).  Additionally, "[t]he plaintiff also must plead and prove 'a reasonable likelihood or probability that the anticipated business relationship will be consummated.'"  *Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261, 1275 (Pa. Super. Ct. 2012) (quoting *Behrend v. Bell Tel. Co.*, 363 A.2d 1152, 1159 (Pa. Super. Ct. 1976) vacated sub nom. *Behrend v. Bell Tel. Co.*, 374 A.2d 536 (1977)).  In *International Diamond Importers*, the Pennsylvania Superior Court found that because the tenant informed the landlord that he was "'currently negotiating both the sublease and/or assignment of this space, as [was his] right under the above-listed documents,'" the landlord had knowledge of the tenant's prospective relationship.  40 A.3d at 1276.  The court determined that a "jury reasonably could have concluded" that the landlord knew of the prospective assignment, and "therefore knew that its actions were at least likely to undermine any such deal."  *Int'l Diamond Importers*, 40 A.3d at 1276.

Unlike in *International Diamond Importers*, Plaintiffs here have failed to produce any evidence that would allow a jury to reasonably find that Defendants had knowledge of Plaintiffs' prospective contractual relationship with Kamala.  Importantly, Plaintiffs' agreement with Kamala occurred five-years after the signing of the Convenience Store Sub-Lease.  Moreover, Plaintiffs have not alleged or produced any evidence suggesting that Plaintiff Shree communicated its intent to eventually sell its interest in the Dunkin Donut franchise to Kamala, or any other party.  Even if Plaintiff Shree contemplated selling his interests in the Dunkin Donuts, there was not a "'reasonable likelihood or probability'" that the contemplated contract

file their lawsuit.  Since Plaintiffs filed suit on August 12, 2014, Plaintiffs' claim is not barred by the two-year statute of limitations.

11

would have materialized.  *See Int'l Diamond Importers*, 40 A.3d at 1275 (quoting *Behrend*, 363 A.2d at 1159).  Therefore, Plaintiffs cannot establish a claim for tortious interference.

### D.  Uniform Trade Practices and Consumer Protection Law

Defendants contend that summary judgment is appropriate for Plaintiffs' claim under the UTPCPL, because the UTPCPL does not apply to commercial transactions.  Pennsylvania's UTPCPL seeks to prevent "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  73 Pa. Cons. Stat. § 201–3.  In particular, the UTPCPL prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  73 Pa. Cons. Stat. § 201–2(4)(xxi).  "To state a plausible claim under the UTPCPL, the Complaint must allege that: '(1) [Plaintiff] purchased or leased goods or services primarily for a personal, family, or household purpose; (2) [Plaintiff] suffered an ascertainable loss of money or property; and (3) the loss occurred as a result of the use or employment by a person of a method, act, or practice declared unlawful by the UTPCPL.'"  *Ries v. Curtis*, No. Civil Action No. 13-1400, 2014 WL 5364972, at *9 (E.D. Pa. Oct. 22, 2014) (quoting *Baynes v. George E. Mason Funeral Home, Inc.*, No. Civ. A.09–153, 2011 WL 2181469, at *4 (W.D. Pa. June 2, 2011)).

The Court finds that the Convenience Store Sub-Lease was not for a personal, family, or household purpose, and therefore Plaintiffs cannot establish a claim under the UTPCPL. Pennsylvania courts have been careful to distinguish between "purchases made for business reasons, which are not actionable, from those made for 'personal, family or household use.'" *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 242 (3d Cir. 2002); *see also Morales v. Superior Living Prods., LLC*, Civil Action No. 07-cv-04419, 2009 WL 3234434, at *13 (E.D. Pa. Sept. 30, 2009) ("Thus, to be actionable under the UTPCPL, a purchase must be

12

primarily for personal, family or household purchases."). The determination of "whether a purchase is used primarily for household purposes . . . depends on the purpose of the purchase, not the type of product purchased." *Carpenter v. Shu-Bee's, Inc.*, Civil Action No. 10-0734, 2012 WL 2594276, at *2 (E.D. Pa. July 5, 2012); *see also Morales,* 2009 WL 3234434, at *13 (dismissing the plaintiff's complaint, and finding that the plaintiff who was engaged in the business of bathroom renovation, had purchased the bathtub for his business and not personal use).

Plaintiffs in this case allege that "[t]he length of the [Convenience Store Sub-Lease] is critical to its value as an acquisition, and a possible resale in the future," and that "it is a basic concept of real estate valuation, that the actual value of a shopping center is directly related to the ability of that center to have an anchor tenant." Compl. ¶¶ 9, 22(B)(2). Plaintiffs' Complaint clearly evinces parties engaged in a transaction for business reasons, not a transaction for "personal, family, or household use." Accordingly, Plaintiff cannot establish a claim under the UTPCPL.

### E. *Breach of the Implied Covenant of Good Faith*

Lastly, Defendants argue that Pennsylvania does not recognize independent claims for breach of the implied covenant of good faith, and therefore Plaintiffs' claim must be dismissed. The Court agrees.

Under Pennsylvania law, it is well established that a plaintiff cannot pursue an independent claim for breach of the implied covenant of good faith, while also pursuing claims for fraud and breach of contract. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 92 (3d Cir. 2000); *King of Prussia Equip. Corp. v. Power Curbers, Inc.*, 158 F. Supp. 2d 463, 466 (E.D. Pa. 2001). In *King of Prussia Equipment Corp.*, the district court recognized that

13

"[b]ecause the actions forming the basis of [plaintiff's] breach of contract claim and its good faith and fair dealing claim are essentially the same, [the plaintiff] cannot pursue both causes of action."  158 F. Supp. 2d, at 467.  Similarly, in *Northview,* the Third Circuit reasoned "that if a plaintiff alleging a violation of the implied covenant of good faith also were to file a claim for fraud based on the same set of facts, Pennsylvania courts likely would decline to proceed with the claim alleging bad faith."  227 F.3d at 92; *see also LSI Title Agency, Inc. v. Evaluation Servs., Inc.,* 951 A.2d 384, 392 (Pa. Super Ct. 2008) (holding that a claim for breach of the implied covenant of good faith and fair dealing was "subsumed in a breach of contract claim").

Like in *King of Prussia Equip. Corp*, *Northview*, and *LSI Title Agency, Inc.*, the actions giving rise to Plaintiffs' claims for breach of contract, fraud in the inducement, and breach of the implied covenant of good faith are indistinguishable.  Accordingly, Plaintiffs' independent claim for breach of the implied covenant of good faith and fair dealing cannot stand, and summary judgment should be granted.

## V.    CONCLUSION

For the reasons set forth above, the Court finds that there is no genuine issue as to any material fact and that Defendants Sanjeev Raj Verma, Kamlesh Modh, Sandeep Verma, and Lukoil North America LLC are entitled to judgment as a matter of law.  Accordingly, Defendants' Motion for Summary Judgment is granted.  An appropriate Order follows.